## STEPHEN W. BISSON *vs.* PLANNING BOARD OF DOVER.

No. 96-P-1043.

Suffolk. May 14, 1997. - September 12, 1997.

Present: BROWN, SMITH, & GREENBERG, JJ.

*Subdivision Control,* Plan, Approval not required, Planning board, Frontage on public way.

A planning board acted contrary to G. L. c. 41, § 81P, by failing to endorse forthwith on a plan that did not show a subdivision that approval under the subdivision control law was not required and by withholding such endorsement after the date of its second meeting to consider the plan. [505-508]

CIVIL ACTION commenced in the Land Court Department on November 27, 1995.

The case was heard by *Leon J. Lombardi,* J, on a motion for summary judgment.

*Judith Cutler* for the defendant.

*Jack Donoghue (Peter Collins* with him) for the plaintiff.

BROWN, J. The planning board (board) of the town of Dover appeals from a grant of summary judgment to Stephen W. Bisson by a judge of the Land Court. The judge determined that the board had acted contrary to G. L. c. 41, § 81P, by failing to endorse "approval under the subdivision control law not required" (ANR) on a plan Bisson submitted. We affirm.

The facts are undisputed. Bisson owns a 33.621 acre parcel of land on Wilsondale Street in Dover and the buildings thereon. On October 23, 1995, Bisson submitted to the board a plan to divide the parcel into two lots — one containing 30.401 acres (Lot 8) and the other 3.22 acres (Lot 8A) — with an application for ANR endorsement pursuant to G. L. c. 41, § 81P.[1] On that

---

[1]Bisson had filed three prior applications for ANR approval for the division of the parcel and land connected to it. Bisson voluntarily withdrew two of them. In his third application, apparently not involving either Lot 8 or Lot 8A,

date, § 5.2 of Dover's zoning by-law required a minimum street frontage of 200 feet in the "R-2 district" where the parcel was located. Section 5.3.3 of the by-law provided an exception to section 5.2 if a lot was large enough to contain a "perfect square" (as defined) and if it had frontage of at least 100 feet on a public way. At the time of Bisson's application, Lot 8A met the requirements of this exception.

The board considered Bisson's application on October 24, 1995. The board did not endorse the plan and deferred its decision until it consulted with town counsel. Bisson appeared before the board on October 29, 1995. The board again continued its consideration of the plan.[2]

On October 30, 1995, the Dover town meeting voted to delete the street frontage exception of its zoning by-law and substitute a new § 5.3.3 that required a lot in the R-2 district to have 200 feet of frontage in addition to the "perfect square" requirement. On November 7, 1995, the board voted unanimously to deny Bisson's application. In a "certificate of action" dated November 8, 1995, the board advised Bisson of the denial, stating that, under the amended by-law, there was not adequate frontage in the plan he submitted. The Attorney General approved the amendment to the by-law on December 1, 1995.[3]

"Anyone who desires to record a plan of land in a city or town in which the subdivision control law (G. L. c. 41, §§ 81K-81GG) is in effect and believes that the plan qualifies for ANR treatment may submit it to the planning board of that city or town pursuant to G. L. c. 41, § 81P. Section 81P provides that

---

the board endorsed ANR on his plan in June, 1995. As for Lot 8A, on a prior application, the board had expressed concern about a proposed driveway through a buffer zone and suggested that Bisson obtain conservation commission approval before presenting his application for ANR endorsement. On October 18, 1995, the commission voted to grant Bisson an "Order of Conditions" with respect to the driveway. The Land Court judge found that this history was relevant only to show that the town knew prior to October, 1995, of Bisson's desire to divide the parcel.

[2]The board has not indicated that town counsel believed that there was some reason to deny or delay Bisson's application.

[3]Bisson argued below that the amendment did not take effect until the date of its approval by the Attorney General. He waived oral argument on the issue in the Land Court and does not argue it here. The argument has no merit because G. L. c. 40A, § 5, as appearing in St. 1987, c. 685, § 3, states: "The effective date of the adoption or amendment of any zoning ordinance or by-law shall be the date on which such adoption or amendment was voted upon by a city council or town meeting . . . ."

an ANR endorsement 'shall not be withheld unless such plan shows a subdivision.' " *Cricones* v. *Planning Bd. of Dracut*, 39 Mass. App. Ct. 264, 266 (1995). "In acting under § 81P, a planning board's judgment is confined to determining whether a plan shows a subdivision." *Id.* at 267, quoting from *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 604 (1980).

It is clear that at the time Bisson submitted his application for an ANR endorsement, his plan did not reveal a "subdivision." A subdivision is defined in G. L. c. 41, § 81L, as appearing in St. 1956, c. 282, as "the division of a tract of land into two or more lots." The definition, however, provides that "the division of a tract of land into two or more lots shall not be deemed to constitute a subdivision within the meaning of the subdivision control law if, at the time when it is made, every lot within the tract so divided has frontage on . . . a public way . . . of at least such distance as is then required by zoning or other ordinance or by-law." Here, each lot had at least 100 feet of frontage on a public way (Wilsondale Street) as then required under Dover's zoning by-law.

The board never has asserted that prior to the October 30, 1995, amendment to its zoning by-law it thought the plan revealed a subdivision or that the board required time to investigate the issue. Neither did the board present evidence of any concern that the plan posed a health and safety concern, see G. L. c. 41, § 81M, because the lots in fact did not allow for sufficient access. See *Perry* v. *Planning Bd. of Nantucket*, 15 Mass. App. Ct. 144, 153 (1983) (board could deny § 81P endorsement, despite technical compliance with frontage requirements, where access to lot was in effect nonexistent); *Shea* v. *Board of Appeals of Lexington*, 35 Mass. App. Ct. 519, 523 (1993) (board could deny § 81P endorsement because there was no "actual way" on which the lot fronted). Here, each lot had over 100 feet of frontage on a public way, Wilsondale Street, and endorsement was required. See *Sturdy* v. *Planning Bd. of Hingham*, 32 Mass. App. Ct. 72, 76 (1992) (planning board may not deny endorsement where there is sufficient frontage on a public way). Contrast *Jaxtimer* v. *Planning Bd. of Nantucket*, 38 Mass. App. Ct. 23, 25 (1995).

The question then is whether the board could defer endorsing Bisson's application for ANR until after the October 30th amendment of the zoning by-law requiring 200 feet of frontage. As the motion judge stated, the answer is found in the plain

language of c. 41, § 81P, as amended through St. 1987, c. 122, which commands:

> "[I]f the board finds that the plan does not require such approval, it shall *forthwith,* without a public hearing, endorse thereon . . . the words 'approval under the subdivision control law not required' or words of similar import . . . . Such endorsement *shall not be withheld* unless such plan shows a subdivision" (emphasis added).

The board argues this language is qualified by a later portion of § 81P, which reads:

> "If the board fails to act upon a plan submitted under this section or fails to notify the [town] clerk . . . and the person submitting the plan of its actions within twenty-one days after its submission, it shall be deemed to have determined that approval under the subdivision law is not required. . . ."

The board claims that it had twenty-one days to act on the plan regardless of when it determined that the plan did not show a subdivision. The board's reading of § 81P, however, would render nugatory the requirement that once the question whether a plan shows a subdivision is resolved in the applicant's favor, the board must render its endorsement "forthwith" and not "withhold" the endorsement.

The board argues that it never made a "finding" that the plan did not contain a subdivision and that therefore the requirement that it endorse the plan ANR "forthwith" was not triggered. We, like the motion judge, do not find this argument persuasive as the plan on its face did not show a subdivision. The board held two meetings at which it considered the plan and never expressed concern that the plan in fact showed a subdivision. Moreover, the board's argument suggests that the decision whether to endorse ANR on a plan submitted under G. L. c. 41, § 81P, requires a great deal of time and consideration. But "[t]he endorsement of such a plan is a routine act, ministerial in character, and constitutes an attestation of compliance neither with zoning requirements nor subdivision conditions." *Hamilton* v. *Planning Bd. of Beverly,* 35 Mass. App. Ct. 386, 389 (1993), citing *Smalley* v. *Planning Bd. of Harwich,* 10 Mass. App. Ct. at 602-605.

The board also suggests that Bisson somehow acted inap-

propriately by trying to "beat the clock" and submit his plan prior to the vote on the zoning amendment. But Bisson's motivation is irrelevant. See *Long* v. *Board of Appeals of Falmouth*, 32 Mass. App. Ct. 232, 235-236 (1992) (applicant's intent in filing application for ANR endorsement irrelevant; if plan shows adequate frontage, planning board's endorsement required).

Finally, the board argues that the judge gave an arbitrary definition to "forthwith" by finding that the board should have endorsed Bisson's plan on either October 24 or October 29, 1995. The term "forthwith" compels action immediately after the determination that a plan does not show a subdivision. It does not contemplate the board's delaying as it did when the plan clearly showed no subdivision. We need not decide the exact date the statute required the board to endorse ANR on Bisson's plan; at the latest, the board should have done so on October 29, 1995, the date of its second meeting to consider the plan.

*Judgment affirmed.*