NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-264

JOSE L. NEGRON

vs.

COMMISSIONER OF CORRECTION & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Jose L. Negron, an inmate at the Massachusetts Correctional Institute at Norfolk (MCI - Norfolk), brought the instant action seeking declaratory and injunctive relief, challenging several aspects of the grievance procedures that are described in 103 Code Mass. Regs. § 491 (2017) and the Department of Correction Standard Operating Procedures (SOPs) for Informal Complaint Resolution. The defendants are the Massachusetts Department of Correction (DOC or department), the Commissioner of the DOC, the Superintendent of MCI - Norfolk,

_____

[1] Massachusetts Department of Correction; the Department of Correction grievance manager; the department grievance coordinator; the institutional grievance coordinator, the informal grievance coordinator, and the superintendent of the Massachusetts Correctional Institution, Norfolk.

the department grievance manager, the department grievance coordinator, the institutional grievance coordinator, and the informal grievance coordinator.  A judge of the Superior Court allowed the defendants' motion to dismiss, and the plaintiff now appeals.  We affirm the dismissal except as to a single claim for a violation of the Administrative Procedures Act, G. L. c. 30A, that is not ripe for adjudication by way of a motion to dismiss.

Background.  1.  Statute.  As relevant here, G. L. c. 127, § 38E (a), provides, "[t]he commissioner shall promulgate regulations to establish a fair, impartial, speedy and effective system for the resolution of grievances filed against the department, its officers or employees, by inmates who are committed to, held by or in the custody of the department."  It specifies that, "[a] grievance system shall provide but not be limited to:  (1) specific maximum time limits for written replies to grievances with reasons for such replies at each decision level within the system."  G. L. c. 127, § 38E (b) (1).

G. L. c. 127, § 38F, provides that

> "[a]n inmate shall not file any claim that may be the subject of a grievance under section 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E; but the court may consider such claim if a final administrative resolution of a grievance filed pursuant to said section 38E has not been decided within 180 days from the date of filing such a grievance. . ."

2

2.  Regulations.  Pursuant to its authority provided by section 38E, the DOC has promulgated 103 Code Mass. Regs. § 491 (2017), titled "Inmate Grievances."  The regulations refer to a "Step 1 Informal Complaint Resolution Process," stating that "[t]he Step 1 Informal Complaint Resolution Process is the preferred mechanism for the resolution of inmate complaints," 103 Code Mass. Regs. § 491.09(2), and that before filing a grievance, an inmate must receive a "step 1 informal complaint decision," 103 Code Mass. Regs. § 491.14(1).  The regulations provide that:

> "Pursuant to the Department Step 1 Informal Complaint Resolution Standard Operating Procedures, each institution shall maintain an informal complaint resolution process which shall include, but not be limited to, the utilization of the standardized informal complaint form.  The Step 1 Informal Complaint Resolution Standard Operating Procedures is available at each inmate library and on the Department's website at http://www.gov/doc/policy, attached to 103 CMR 491.00."

103 Code Mass. Regs. § 491.09(3).  The regulations do not contain these SOPs.  See 103 Code Mass. Regs. § 491.  Under the regulations, in order not to waive their rights, an inmate must bring a grievance within ten days of "receipt of the step 1 informal complaint decision."  103 Code Mass. Regs. § 491.14(1).

The regulations provide that, "[e]mployees named in a grievance shall not participate in any capacity in the processing, investigation, or decision of the grievance."  103 Code Mass. Regs. § 491.15(1).  They further provide that, "[t]he

3

Institution Grievance Coordinator shall be impartial and may not simultaneously hold any other position that may present a potential conflict of interest, including, but not limited to, property or mail officer."  103 Code Mass. Regs. § 491.10(1).

The Institutional Grievance Coordinator ("IGC") must respond to the grievance "within ten business days from receipt of the grievance unless the inmate has been provided a written extension of time . . . in accordance with" 103 Code Mass. Regs. § 491.17.  See 103 Code Mass. Regs. § 491.15(3)(g).  Title 103 Code Mass. Regs. § 491.17(1), in turn, provides:

> "The time periods for filing a grievance may be extended by ten business days and the time period for responding to a grievance may be extended by ten business days if the IGC or superintendent determines that the initial period is insufficient to make an appropriate decision or if the inmate presents a legitimate reason for requesting an extension.  Unless extenuating circumstances exist, the time frame for filing a grievance shall not exceed 20 business days and the time frame for responding to a grievance shall not exceed 30 business days."

At the same time, 103 Code Mass. Regs. § 491.14(9) provides, "[t]he absence of a grievance response after six months shall be deemed a denial of the grievance."

3.  The informal complaint resolution process SOPs.  The regulations were adopted pursuant to the Administrative Procedures Act, G. L. c. 30A, in 2017.  See 103 Code Mass. Regs. § 491.  The public hearing on the regulations was held on October 6, 2016.  The notice of public hearing is (unhelpfully)

4

undated, but notice is required no less than twenty-one days before the public hearing, G. L. c. 30A, § 2, so it ought to have been issued no later than September 15, 2016.

In 2016, the department issued the SOPs, which are dated "October 2016." Department of Correction Standard Operating Procedure (SOP) for Informal Complaint Resolution (October 2016) ("2016 Informal Complaint Resolution SOP"). A new version was issued by the department in 2020. Department of Correction Standard Operating Procedure (SOP) for Informal Complaint Resolution (December 2020) ("2020 Informal Complaint Resolution SOP").

In both versions, the SOPs provide that inmates are required to file their "informal complaint form within five (5) working days of the actual incident or within five (5) working days of the inmate's becoming aware of the incident or situation, whichever is later." 2016 Informal Complaint Resolution SOP at 2; 2020 Informal Complaint Resolution SOP at 2.

The 2016 version states,

"h) Within one (1) working day of logging the informal complaint form, the responsible supervisory staff person shall forward a copy of the informal complaint form to the appropriate department head or the responsible area staff person for possible resolution.

"i) The department head or responsible area staff person shall evaluate the request or concern, including interviewing the inmate if deemed appropriate.

5

"j) Once the department head or responsible area staff person makes his/her decision, he/she shall take appropriate action to resolve the matter or advise the inmate of the reason for denial of the inmate's complaint.

"k) The department head or responsible area staff person shall issue a response to the inmate within ten (10) working days of receipt from the responsible supervisory staff."

2016 Informal Complaint Resolution SOP at 2-3.

This language was changed slightly in the new version issued in 2020. In that more recent version, the SOP provides that,

"i) Within one (1) working day of logging the informal complaint form, the Informal Complaint Coordinator shall forward a copy of the informal complaint form to the responsible area staff person for possible resolution."

2020 Informal Complaint Resolution SOP at 3. This eliminates any role for a department head.

The 2020 version then provides,

"j) The responsible area staff person shall evaluate the request or concern, including interviewing the inmate and the staff person responsible for the area where the problem occurred, if deemed appropriate."

2020 Informal Complaint Resolution SOP at 3. This adds the requirement that if deemed appropriate, the staff person responsible for the area where the problem occurred be interviewed.

The 2020 version goes on,

"k) Once the responsible area staff person makes his/her decision, he/she shall take appropriate action to resolve

6

the matter or advise the inmate of the reason for denial on the informal complaint form[].

"l) The responsible area staff person shall document their response on the informal complaint form within ten (10) working days of receipt and return it to the Informal Complaint Coordinator."

2020 Informal Complaint Resolution SOP at 3.

<u>Discussion</u>. We review a motion to dismiss allowed under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), de novo. See <u>Lanier</u> v. <u>President & Fellows of Harvard College</u>, 490 Mass. 37, 43 (2022). We must accept all the allegations of the complaint as true, and dismissal is appropriate only where the plaintiff has failed to state a claim on which relief may be granted. <u>Id</u>.; Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). We reserve description of the allegations of the complaint for our discussion of each of the plaintiff's claims below.

1. <u>The regulations' 180-day failure to act provision</u>. In his complaint, the defendant argues that he has filed several grievances that have not been ruled upon for over thirty days. He challenges first that section of the regulations, 103 Code Mass. Regs. § 491.14(9), that provides that inaction on a grievance within six months shall be deemed a denial. He argues that this provision conflicts with the statute and with two provisions of the regulations that set a deadline for responding to a grievance. He notes that the statute provides that a grievance system "<u>shall</u> provide but not be limited to . . .

7

specific maximum time limits for written replies to grievances with reasons for such replies at each decision level within the system" (emphasis added). G. L. c. 127, § 38E (b).

Of course, the regulations do include deadlines for responding to grievances. See 103 Code Mass. Regs. §§ 491.15(3)(g), 491.17(1). The plaintiff acknowledges this. His complaint is that the provision allowing inaction for six months to be treated as a denial is inconsistent with those deadlines being met and, indeed, appears to allow the defendants to miss those deadlines.

Although this argument makes some logical sense, we cannot properly say these provisions violate the statute. This is because the statute itself, in § 38F, envisions that, notwithstanding the deadlines, final administrative resolution of a grievance may not be decided later than 180 days from the date of filing of such a grievance. It effectively provides that in such circumstances the administrative process is exhausted and allows judicial review. Given that (and construing the "six months" language in the regulations to mean 180 days) the regulations thus simply restate the statute in this respect. Compare G. L. c. 123, § 38F, with 103 Code Mass. Regs. § 491.14(9). Because the statute itself provides for deadlines but also for review after 180 days of inaction, we

8

cannot conclude that the regulations' provisions are in conflict with the statute.

We note that we read the plaintiff's complaint as a challenge to the regulations insofar as they envision, and thus may be said even to permit, a failure to act on a grievance for six months.  We express no opinion about whether it would be lawful for a correctional institution to adopt a pattern or practice of not ruling on grievances, or some subset thereof, rather than meeting the regulatory deadlines.  The plaintiff's brief contains more alleged details suggesting, if true, the possibility of a more serious problem at MCI - Norfolk with failure to respond to grievances within 180 days.  However, these allegations are not contained in the complaint and, therefore, are not properly before us.

2.  <u>Do the SOPs violate the regulations</u>?  Next, the plaintiff argues that the SOPs violate the regulations.  See <u>Drayton</u> v. <u>Commissioner of Correction</u>, 52 Mass. App. Ct. 135, 139-140 (2001) (even though punishment does not implicate liberty interest, prisoners may still allege that prison officials failed to adhere to process required by department's regulations).

First, he argues that by referring the informal complaints to the relevant area officer, the informal complaint resolution procedure may allow adjudication of the informal complaint, the

9

prerequisite to bringing a grievance, by the very official whose conduct is being challenged, in violation of the regulations. 103 Code Mass. Regs. § 491.15(1) ("Employees named in a grievance shall not participate in any capacity in the processing, investigation, or decision of the grievance").

There is not an allegation that this has happened in his case, only that the superintendent allows this practice. This thus amounts, in essence, to a facial challenge to that aspect of the standard operating procedures.

Where there is no allegation that this has happened in this particular case, and where it is not necessarily the case that the person to whom the complaint is referred will be the alleged perpetrator of the conduct being complained of, the provision of the SOPs with respect to the relevant area officer is not, on its face, in violation of the regulation prohibiting an employee named in a grievance from having anything to do with the adjudication of the grievance. See 103 Code Mass. Regs. § 491.15(1).

Because the informal procedure is a required part of the grievance procedure, see 103 Code Mass. Regs. § 491.14(1), there would be, at least, a substantial argument -- that we need not and do not decide here -- that referring an informal complaint to the very person whose conduct is at issue would violate the regulations. We presume, however, that the SOPs will be

implemented in each case by the department in a way that does not violate the regulations.

The plaintiff also argues that the regulation provides that grievances must be filed within ten days of receipt of the decision on the informal complaint, 103 Code Mass. Regs. § 491.14(1), but that the informal complaint procedure must be invoked only five days after the incident or the inmate's awareness of the incident, whichever is later. 2020 Informal Complaint Resolution SOP at 2.

But this shorter time for filing the informal complaint does not violate or contradict the regulation. The regulation clearly envisions adoption of a process for informal complaints and does not specify that they must have a ten-day window for filing. See, e.g., 103 Code Mass. Regs. § 491.14. We recognize that the differing deadlines may be confusing to an inmate, who is entitled not to lose their right to grieve because of traps for the unwary, but there is no allegation that that happened in the plaintiff's case.

3. <u>Promulgation of the SOPs without compliance with the Administrative Procedures Act</u>. The plaintiff argues next that the SOPs amount to a regulation that has not been properly promulgated pursuant to the Administrative Procedures Act (APA). This allegation has more substance. The complaint asserts that there was never any public hearing held on the SOPs, as required

11

for regulations by G. L. c. 30A, § 2, and that the SOPs were never published in the Massachusetts Register, as required for final regulations by G. L. c. 30A, § 6.

> "Under the APA, a regulation 'includes the whole or any part of every rule, regulation, standard or other requirement of general application and future effect, including the amendment or repeal thereof, adopted by an agency to implement or interpret the law enforced or administered by it.'  G. L. c. 30A, § 1 (5).  Given the purpose of the APA, we interpret its definition of regulation broadly."

Carey v. Commissioner of Correction, 479 Mass. 367, 371 (2018). The name an agency assigns to its policies does not determine whether they must be adopted through the APA's procedures. Indeed, in Carey, the Supreme Judicial Court concluded that what the DOC termed a "policy" was in fact not exempt from the requirements of the APA.  Carey, 479 Mass. at 372.  See Attorney Gen. v. Milton, 495 Mass. 183, 194-195 (2025) (agency's "guidelines" were regulations that needed to be promulgated pursuant to APA).

In the trial court, the DOC argued only that the SOPs were exempt from the APA as a "regulation[] concerning only the internal management or discipline of the adopting agency or any other agency . . . not substantially affecting the rights of or the procedures available to the public or that portion of the public affected by the agency's activities," which are not subject to the APA.  G. L. c. 30A, § 1 (5).

12

But this is not the case.  As in Carey, 479 Mass. at 372, they are "not exempt from APA requirements as [they are] not [regulations] that concern[] internal management alone."  Although they include many rules about the internal processing of informal complaints, "at a minimum, [they] substantially affect[] the procedures available to," id., inmates who have a grievance, just as the regulations at 103 Code Mass. Regs. § 491 do.  Indeed, the SOPs provide, inter alia, the deadlines and procedures that must be followed if an inmate wishes to have his informal complaint considered so that he remains eligible to file a grievance, see  2016 Informal Complaint Resolution SOP at 2; 2020 Informal Complaint Resolution SOP at 2, just as 103 Code Mass. Regs. § 491.14 does with respect to the grievance procedure itself.

Consistent with this, the judge did not conclude that the SOPs were exempt from the APA under § 1 (5).  Rather, the judge reasoned,

"At th[e] time [of the public hearing on 103 Code Mass. Regs. § 491] (and now), 103 CMR § 491.09(3) stated:

"[']Pursuant to the Department Step 1 Informal Complaint Resolution Standard Operating Procedures, each institution shall maintain an informal complaint resolution process which shall include, but not be limited to, the utilization of the standardized informal complaint form.  The Step 1 Informal Complaint Resolution Standard Operating Procedures is available at each inmate library and on the Department's website at

13

> http://www.gov/doc/policy, attached to 103 CMR
> 491.00.[']

> "Thus, the SOP existed and was available for public
> inspection and comment when the DOC promulgated the
> regulation in 2017 and the Court concludes that the DOC
> followed the APA with respect to the SOP."

At this stage of the proceedings, we must take the allegations in the complaint as true, that there was no hearing on the SOPs.  See Lanier, 490 Mass. at 43.  Even if the proposed regulation stated that the SOPs were available, that does not demonstrate that they were actually made available along with the regulations pursuant to the notice, as required by G. L. c. 30A, § 2, rather than when the proposed regulations became final.  And we take judicial notice of the fact that the plaintiff is correct that the SOPs have never appeared in the Massachusetts Register as final regulations must after their adoption.  1138 Mass. Reg. 73-84 (May 5, 2017).  On the other hand, if the proposed regulation said, as the final regulation does, that the SOPs are "attached" to the regulations, this may mean that they were attached to the version made available to the public as described in the notice of hearing; the notice of hearing states that "[a] copy of the proposed amendments may be

14

viewed on the Department's website or obtained from the

Department's Regulations Counsel."[2]

In any event, the factual question whether the SOPs were provided at the time of the notice of hearing as an attachment to the proposed regulations cannot properly be resolved at the motion to dismiss stage of litigation.  Consequently, the dismissal of the claim for failure to comply with the APA must be reversed.

---

[2] After the hearing on the motion to dismiss, but while the motion was still under advisement, the plaintiff filed a motion for leave to submit supplemental material.  These materials were a copy of the notice for the public hearing the department held as part of the process of promulgating 103 Code Mass. Regs. § 491, and the minutes from that hearing.  The judge accepted these materials de bene.

On appeal, the plaintiff argues that the judge erred in excluding these materials from her final consideration.  It appears to us, however, that the judge did consider these materials, which is why we do so in this memorandum and order. In her Memorandum of Decision, the judge noted that the department held public hearings on 103 Code Mass. Regs. § 491 in 2016 -- a fact which appears to be drawn from the notice of public hearing plaintiff submitted.  While the judge did not discuss the meeting minutes -- in which one member of the public indicates the SOPs were not yet available -- given that she discussed the timing of the public hearings, it appears she did accept the plaintiff's materials, but simply did not ascribe the weight to the minutes that the plaintiff wishes she had.

The defendants have not raised any objection before us to consideration of these materials.  "In evaluating a rule 12 (b) (6) motion, we take into consideration 'the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'"  Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000), quoting 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1357, at 299 (1990).

15

Conclusion.  For these reasons, the portion of the judgment dismissing the plaintiff's claim that the SOPs were adopted without compliance with the APA is vacated.  The remainder of the judgment is affirmed.  The case is remanded to the Superior Court for further proceedings consistent with this memorandum and order.

So ordered.

By the Court (Rubin, Neyman & Tan, JJ.[3]),

Clerk

Entered:  November 24, 2025.

---

[3] The panelists are listed in order of seniority.